UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-21351-CIV-MARTINEZ/OTAZO-REYES

DYMA LOVING,

      Plaintiff,

v.

MIAMI-DADE COUNTY, *et al.*,

      Defendants.

_____/

MIAMI-DADE COUNTY'S *UNOPPOSED* MOTION TO STAY
PROCEEDINGS PENDING RESOLUTION OF RELATED STATE
CRIMINAL AND ADMINISTRATIVE INVESTIGATIONS

Defendant, Miami-Dade County ("the County"), with Plaintiff's consent, requests that this Court stay all proceedings and administratively close the case until the ongoing state criminal investigation, and subsequent administrative investigation, into the subject incident have been concluded.[1]

This is a civil rights lawsuit arising out of an incident involving Miami-Dade police officers, which occurred on March 5, 2019. On April 10, 2019, approximately five weeks after the incident alleged, Plaintiff filed this lawsuit. Counsel for Plaintiff have confirmed to the undersigned that the State Attorney's Office ("SAO") has initiated a criminal investigation regarding the subject incident. After the SAO completes its investigation into the incident, it will decide whether to pursue criminal charges against the officers or to clear them of criminal

---

[1] This Court has granted stays under the similar circumstances here. *See, e.g.*, *Prosper v. Martin*, Case No. 17-20323-Civ (D.E. 20) (Altonaga, J.); *Young v. Miami-Dade County*, 16-Civ-23852 (D.E. 20) (Altonaga, J.); *Rincon v. Miami-Dade County, et al.*, Case No. 16-Civ-22254 (D.E. 25) (Gayles, J.); *Montefu Acosta v. Miami-Dade County*, Case No. 16-CIV-2324 (D.E. 7) (Ungaro, J.); *Perkins, et al. v. City of Miami Beach*, Case No. 14-Civ-21923 (D.E. 56) (Ungaro, J.); *Arnold v. Sainvil, et al.*, Case No. 15-Civ-20973 (D.E. 53) (Gayles, J.); *Rogers v. Miami-Dade County*, Case No. 12-Civ-23506 (D.E. 30) (Graham, J.); *Urrea v. Miami-Dade County, et al.*, Case No. 12-Civ-22101 (D.E. 38) (Hoeveler, J.); *Gregory, et al. v. Miami Dade County*, Case No. 13-Civ-21350 (D.E. 18) (Graham, J.).

wrongdoing. Then, once the criminal investigation is concluded, Miami-Dade Police Department's Professional Compliance Bureau (i.e., internal affairs) will finalize its administrative investigation to determine whether any employment discipline is appropriate.

As of today, less than two months after the incident, the SAO investigation obviously remains open. Thus, all reports, documents, and information created or obtained in connection with the subject incident are protected from disclosure pursuant to applicable state and federal law pending the completion of these criminal and administrative investigations. While these investigations are ongoing, the County will be unable to respond to Plaintiff's discovery requests with respect to any documents created in response to the incident. It is important to note that, like Plaintiff, neither the County nor the officers have any access to the documents or information in the investigative file due to its protected status. Therefore, all parties are left without important evidence and documents needed to both advance and defend this lawsuit.

For example, without evidence, documents, and information discovered by the investigation, the County cannot defend itself against any allegation that it is vicariously liable under state law for the officers' alleged actions. Indeed, without access to the investigative file, the County cannot even determine with reasonable certainty what affirmative defenses are available to it at this time. Moreover, because criminal charges may be filed against the officers, they may have little choice but to assert their Fifth Amendment privilege against self-incrimination in response to written discovery requests, depositions inquiries, or at trial. In doing so, the officers risk the possibility of a jury taking adverse inferences from the assertion of their Fifth Amendment rights, as well as the possibility of civil sanctions for failing to respond to discovery requests. Plaintiff would also be prejudiced, as she will not have the benefit of the reports, records, evidence,

and documents created or obtained in response to the incident as she prosecutes this case, nor will she be able to effectively depose the officers.[2]

Thus, the County requests that this Court stay all proceedings and administratively close this matter until the conclusion of all criminal and administrative investigations into the incident which relates to the allegations in this case.[3]

## ARGUMENT

"The decision to stay a civil action pending resolution of a parallel criminal proceeding is a matter of court discretion." *Perkins*, Case No. 14-Civ-21923 (D.E. 56) (Ungaro, J.) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). Consistent with their inherent power to control their dockets and to ensure the fair adjudication of cases, district courts have broad discretion in deciding whether to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (finding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of [sic] related proceeding in another forum is not questioned."). A court must decide to stay a civil proceeding pending resolution of related criminal proceedings

---

[2] It bears noting that without the protected documents and information, the officers, who may assert qualified immunity, might be unable to properly support their entitlement to qualified immunity. Qualified immunity protects police officers not only from liability, but also from all of the burdens of litigation. *See, e.g., Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) ("Qualified immunity is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Blinco v. Green Tree Services*, 366 F.3d 1249, 1252 (11th Cir. 2004) ("The defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery."). Thus, absent a stay, the officers will have to bear the burdens of litigation, and their entitlement to qualified immunity may be abrogated by preventing them from mounting a meaningful pretrial defense.

[3] The parties agree to provide the Court periodic updates regarding the status of the ongoing investigations.

3

"when 'special circumstances' so require in the 'interests of justice.'" *United States v. Lot 5, Fox Grove, Alachua County*, 23 F.3d 359, 364 (11th Cir. 1994) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). Indeed, a court may stay civil discovery from a defendant when there are parallel civil and criminal proceedings against the same defendant and participation in civil discovery would implicate the defendant's Fifth Amendment privilege. *See Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087-89 (5th Cir. 1980); *see also Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

A stay is warranted here because the underlying incident and the police officers are the subject of ongoing criminal and administrative investigations and because, as a result of those investigations, neither the County nor the officers may gain access to evidence that is critical to their defense in this civil action. Additionally, if this case is not stayed, the officers will be exposed unnecessarily to the burdens of litigation, thereby impinging upon their inevitable invocation of qualified immunity. As in several cases noted above, the interests of justice warrant a stay of this case pending the conclusion of the state criminal investigation into this incident.

## I.   The Documents and Information Relating to the Subject Incident are Exempt From Disclosure Pursuant to State and Federal Law

It is well-established that "[w]hile Florida has a strong public policy in favor of open government, the sanctity of police records compiled during a criminal investigation also has a long heritage in Florida." *Barfield v. City of Ft. Lauderdale Police Dep't*, 639 So. 2d 1012, 1014 (Fla. 4th DCA 1994); *see also City of Riviera Beach v. Barfield*, 642 So. 2d 1135, 1136 (Fla. 4th DCA 1994) ("Although Florida maintains a strong public policy in favor of open government, the critical importance of preserving the confidentiality of police records surrounding and compiled during an active criminal investigation remains of significant concern.").

4

Accordingly, the legislature has codified a specific statutory exemption from disclosure providing that "[a]ctive criminal intelligence information and active criminal investigative information are exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution." Fla. Stat. § 119.071(2)(c)(1). The purpose of the statute is to prevent premature public disclosure of criminal investigative information, since disclosure could impede an ongoing investigation. *See White v. City of Ft. Lauderdale*, No. 08-60771–CIV, 2009 WL 980287, at *3 (S.D. Fla. April 10, 2009) (Simonton, J.) (citing *Barfield*, 642 So. 2d at 1137). Criminal investigations and criminal intelligence information are considered active if, even though there is no immediate anticipation of an arrest, "the investigation is proceeding in good faith, and the state attorney or grand jury will reach a determination in the foreseeable future." *Barfield*, 639 So. 2d at 1017.

In short, an active criminal investigation means that "an arrest or prosecution ***may*** result, not that it must." *Barfield*, 639 So. 2d at 1017 (emphasis added). Here, the state criminal investigation remains pending, and the State Attorney will determine whether to pursue criminal charges in the foreseeable future. Thus, the documents, evidence, and information created or obtained in connection with the subject incident "are presently part of an ongoing criminal investigation and are exempt from public disclosure under the Florida Public Records Law, which ***evidences a strong policy interest on the part of the government in keeping the records confidential.***" *White*, 2009 WL 980287, at *3 (emphasis added).

Additionally, once the criminal investigation is completed, regardless of whether criminal charges are brought, the officers will continue to be the subject of an internal affairs investigation. The documents, evidence, and information related to the incident will thus continue to be exempt from disclosure pursuant to Florida Statutes § 112.533(2)(a), until the conclusion of the department's administrative investigation:

5

A complaint filed against a law enforcement officer or correctional officer with a law enforcement agency or correctional agency and all information obtained pursuant to the investigation by the agency of the complaint ***is confidential and exempt from the provisions of s. 119.07(1) until the investigation ceases to be active***, or until the agency head or the agency head's designee provides written notice to the officer who is the subject of the complaint, either personally or by mail, that the agency has either:

> 1.  Concluded the investigation with a finding not to proceed with disciplinary action or to file charges; or
> 2.  Concluded the investigation with a finding to proceed with disciplinary action or to file charges.

Fla. Stat. § 112.533(2)(a) (emphasis added).

In addition to the exemption from disclosure in Chapters 112 and 119 of the Florida Statutes, the documents, evidence, and information created or obtained in connection with the subject incident are also protected from disclosure to all parties pursuant to the "federal privilege for criminal investigative files [which] provides for the protection of files relating to ongoing criminal investigations." *Sirmans v. City of South Miami*, 86 F.R.D. 492 (S.D. Fla. 1980) (citing *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969)); *see also In re U.S. Dep't of Homeland Security*, 459 F.3d 565, 569-70 (5th Cir. 2006) (holding district court erred in refusing to recognize law enforcement privilege when determining whether the government would have to disclose documents which arguably were part of ongoing investigations); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation. . . .").

While it is well-settled that federal law governs the determination of the existence of a privilege in cases where the jurisdiction of the court is predicated upon federal law, as here, "***[f]ederal courts will, however, consider state policies supporting a privilege in weighing the government's interest in confidentiality***." *Coughlin*, 946 F.2d at 1159 (emphasis added); *see also White*, 2009 WL 980287, at *3 ("[f]ederal courts may consider state policies supporting a privilege

6

claim in assessing the government's interest in maintaining confidentiality"). Thus, courts must consider Florida's interest in and policy of protecting the confidentiality of the records and information related to an ongoing criminal investigation when applying the federal law enforcement privilege. Notably, this Court has previously recognized that the ongoing criminal investigation exemption in the Florida Public Records Law "***evidences a strong policy interest on the part of the government in keeping the records confidential***." *White*, 2009 WL 980287, at *3 (emphasis added).

The following factors have been considered in determining the application of the qualified privilege for police investigative files:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Sirmans*, 86 F.R.D. at 495. Several of these factors are applicable here and demonstrate that, were a party to seek to compel disclosure of the documents and information in the investigative files, a court would likely determine that the files are protected.

First, as noted previously, the SAO investigation has not been completed and remains active and ongoing. Additionally, the case is under review by the police department's Professional Compliance Bureau ("PCB"), which will not conclude its investigation until the state criminal investigation is completed.

Second, the potential unintended disclosure of criminal investigative information could obstruct the state criminal investigation. Here, because the content of the investigative files is unknown, it is impossible to predict the extent to which a premature release of the confidential files may hinder or affect the ongoing criminal investigation. However, examples of potential harm include, *inter alia*, the loss of potential leads or the possibility that the subject(s) of the investigation or others could be privy to sensitive and confidential information that is still being investigated and subject to protection from disclosure.

Third, because internal investigations are not only meant to determine whether any employment discipline is appropriate, but also to prevent future impropriety, the disclosure of the investigative materials before investigations are concluded could potentially chill governmental self-evaluation and resulting program improvement.

Finally, premature disclosure of investigative materials could negatively impact the objectivity, and thus, credibility, of internal investigations. For example, prematurely releasing any confidential investigative material could taint future witness statements or prevent internal affairs from obtaining further investigative materials.

Notably, Plaintiff will ***not*** be prejudiced by a stay of these proceedings so long as these files remain confidential, because Plaintiff will ultimately have access to the documents and information once they are no longer exempt pursuant to Florida Statutes sections 119.071(2)(c)(1) and 112.53(2)(a). *See Barfield*, 639 So. 2d at 1018 ("[T]his is not a situation where the information sought will remain permanently confidential. Rather, once the investigations are concluded, if no charges are filed, the records would cease to be 'active' and thus subject to disclosure.").

8

In short, the federal qualified privilege, along with state law exemptions, protect critical information related to the subject incident from being disclosed ***even to the defendants themselves***, until the conclusion of criminal and administrative investigations.

## II.   The Court Should Stay These Proceedings Because Defendants are Unable to Properly Mount a Defense Until the State Criminal and Internal Administrative Proceedings are Completed, and Plaintiff Would Not be Unduly Burdened by the Stay

In determining whether to stay these proceedings, the Court must balance the competing interests of the parties. *See Landis*, 299 U.S. at 254-55. Such balancing should be done "with a view toward accommodating those interests, if possible." *Wehling*, 608 F.2d at 1088 (granting plaintiff's motion to stay discovery where stay would not impose undue hardship on the defendant). This accommodation of the parties' interests is consistent with "the court's role in a civil proceeding . . . to ensure that fairness permeates the proceeding and to try to ascertain the truth." *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003) (granting stay in light of open criminal investigation).

> In balancing the interests of the parties, courts consider several factors, including:(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980); *see also Volmar Distributors*, 152 F.R.D. at 39. Additional factors to consider are: (6) the status of the criminal proceeding, *Frierson v. City of Terrell*, Case No. 3:02-CV-2340, 2003 WL 22479217, at *2 (N.D. Tex. Aug. 4, 2003), and (7) the overlap of the criminal and civil cases, indicating the extent to which Fifth Amendment rights are implicated, *Heller Healthcare Finance v. Boyes*, Case No. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002).

9

Of these factors, several courts have identified the overlap between the criminal and civil actions to be "the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F. Supp. 2d 902, 907 (S.D. Tex. 2008); *see also Lay v. Hixon*, Case No. 09-0075-WS-M, 2009 WL 1357384 (S.D. Ala. May 12, 2009) (citing *Dominguez* and holding same); *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1039 (W.D. Mich. 2007) (holding same); *State Farm Lloyds v. Wood*, Case No. H-06-503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006) (holding same); *cf. Perkins*, Case No. 14-Civ-21923 (D.E. 56) (Ungaro, J.) (noting "[t]he cases at bar substantially (if not entirely) overlap with the criminal investigation being conducted by the State Attorney's Office").

Here, the factors listed above weigh heavily in favor of granting a stay of all proceedings. Most notably, because the criminal investigation into the incident that forms the basis of Plaintiff's allegations remains open, the parties are left to litigate this case without the benefit of pertinent discovery as the documents, evidence, and information related to the incident are exempt from disclosure pursuant to Florida Statutes §§ 119.071(2)(c)(1) and 112.53(2)(a) and the federal qualified privilege. This creates an onerous and irreparably harmful burden on the County as well as the officers, as they will be effectively unable to mount a defense to the claims against them.

### a. Plaintiff Would Not be Prejudiced if Motion to Stay is Granted

Plaintiff's interest in proceeding with this litigation—so quickly after the incident—does not weigh against entering the stay. Any relief to which Plaintiff would be entitled at the end of this case would still be available after the stay has expired. Plaintiff has preserved these claims by filing this action within the applicable statute of limitations. But if the case goes forward, Plaintiff will be unable to pursue any meaningful discovery while the State Attorney and PCB investigations remain pending, as all of the pertinent documents, evidence, and information related

10

to the incident are exempt from disclosure and will therefore be unavailable to Plaintiff until those investigations are concluded. Moreover, because criminal charges potentially could be filed against the officers, they may have little choice but to assert their Fifth Amendment privilege against self-incrimination. This would hinder Plaintiff's ability to effectively depose the officers.

### b.  The County Would be Prejudiced if Motion to Stay is Denied

Because of the ongoing investigations, and the possibility of the officers' assertion of their Fifth Amendment privilege in response to any discovery directed to them, the County will not have the benefit of the officers' full account of the subject incident. The County, therefore, will have no way to thoroughly address the legality of the officers' actions. Hence, the County would suffer irreparable prejudice if required to proceed without access to the officers' complete account of the events surrounding the alleged incident. Additionally, without access to the pertinent documents, evidence, and information, the County will have no real opportunity to either move for summary judgment or defeat such a motion. Moving forward with proceedings would thus unfairly handicap the County's ability to defend against this lawsuit.

In situations such as this, where one party would suffer prejudice due to another party's Fifth Amendment assertion, courts have granted a stay of civil proceedings pending the completion of criminal investigations. *See, e.g.*, *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 816 (E.D. Wis. 1993) (granting stay because "it is not likely that either [co-defendant] could proceed to trial without meaningful discovery" from the defendant who asserted the privilege); *Volmar*, 152 F.R.D. at 41 (staying discovery of all defendants, including those who had no Fifth Amendment rights to assert, to avoid prejudicing their defense); *Librado v. M.S. Carriers, Inc.*, Case No. 3:02-CV-2095D, 2002 WL 31495988, at *2-3 (N.D. Tex. Nov. 5, 2002) (granting stay where the

11

testimony of the person invoking the privilege was essential to a fair adjudication of the case and where that person's conduct was the basis for plaintiffs' claims).

In *Librado*, the plaintiff sought to hold a company liable for its employee's automobile crash—an incident for which the employee was also charged criminally for negligent homicide. 2002 WL 31495988, at *1. When the employee asserted his Fifth Amendment privilege, "thereby stymieing [the employer's] ability to defend itself," the district court agreed to a stay. *Id.* at *2-3. The court was particularly moved by the fact that the company's liability depended on its employee's conduct and that it would be "subject . . . to undue prejudice" without that employee's testimony. *Id.*

Similarly, in *Bruner Corp.* and *Volmar*, the district courts held that a stay was proper where at least one defendant asserted the privilege, disadvantaging not only his own civil defense but that of his co-defendants as well. *See Bruner Corp.*, 819 F. Supp. at 816; *Volmar*, 152 F.R.D. at 41. Indeed, in *Volmar* the court explained that only a ***complete*** stay avoids duplication of effort and unnecessary litigation costs. *Volmar*, 152 F.R.D. at 41. The court reasoned that if only a partial stay is granted, the parties may need to re-depose individuals once the partial stay is lifted and plaintiff proceeds to depose the defendants whose Fifth Amendment rights were implicated and were central figures to the litigation. *Id.*

Here, a stay of the civil proceedings is similarly warranted because the officers, whose Fifth Amendment rights may be implicated, are "central" figures in this litigation. Thus, denying the stay would likely result in additional expenses for the parties, where depositions and other discovery would have to be re-taken once the officers are able to testify without implicating their Fifth Amendment rights. Additionally, just as in *Librado*, *Bruner Corp.*, and *Volmar*, the Court here should grant the stay because it would be unjust to require the County to proceed with

12

discovery and trial while substantially and irreparably prejudicing its defense due to its co-defendants' assertion of a constitutional right. This is particularly true when the basis for the County's alleged liability is based on its co-defendants' actions.

### c.  The Officers May Be Prejudiced if the Motion to Stay is Denied

While the criminal investigation remains pending, the officers may face an unnecessary dilemma: surrender their Fifth Amendment rights against self-incrimination, or alternatively, not testify or respond to discovery requests and risk the possibility of adverse inferences being taken from the assertion of these Fifth Amendment rights or the possibility of civil sanctions.  *See Arango v. United States Dep't of the Treasury*, 115 F.3d 922, 926 (11th Cir. 1997) ("The Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination."); *United States v. Two Parcels of Real Property Located in Russell County, Alabama*, 92 F.3d 1123, 1129 (11th Cir. 1996) ("the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds"); *United States v. A Single Family Residence & Real Property*, 803 F.2d 625, 629 n. 4 (11th Cir. 1986) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

Where there are parallel civil and criminal proceedings against the same defendant and participation in civil discovery would implicate the defendant's Fifth Amendment privilege, a court may exercise its discretionary power to stay all proceedings.  *See Landis*, 299 U.S. at 254 (finding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"); *see also Healthsouth Corp.*, 261 F.Supp.2d at 1326 ("The degree to which the issues in the simultaneous civil and criminal proceedings overlap

13

is the most important threshold issue in deciding whether the court should stay the civil proceeding."); *Heller Healthcare*, 2002 WL 1558337, at *2 (stating that "self-incrimination is more likely if there is significant overlap" between the civil and criminal cases).  Thus, where, as here, the criminal and civil proceedings both arise out of the same occurrence or allegations, such overlap weighs in favor of a stay.  *See, e.g.*, *Volmar*, 152 F.R.D. at 39 (staying discovery where the same activity gave rise to both the criminal and civil cases); *Healthsouth Corp.*, 261 F. Supp. 2d at 1326 (granting stay where "the criminal and civil cases overlap completely"); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993) ("A stay of civil discovery is sometimes appropriate to protect competing interests arising from parallel civil and criminal proceedings involving the same subject matter.").

### d.  The Court Would Not be Burdened if Motion to Stay is Granted

Additionally, this Court would suffer no inconvenience or inefficiency by granting a stay. *See Librado*, 2002 WL 31495988, at *3 (recognizing that "granting a stay will not unduly interfere with the court's management of its docket").  Indeed, a stay would assist in narrowing the issues in this case because once the relevant information within the investigative file is revealed it may be possible to narrow the claims that have thus far been asserted.  On the other hand, without a stay there is a real risk that critical evidence could become available on the eve of trial, or even after trial, which would necessarily create delays and inefficiencies for both the parties and the Court.  For example, a party could move to reopen this case even after final judgment because of newly discovered evidence that would become available after the conclusion of the criminal and administrative investigations.  *See* Fed. R. Civ. P. 60(b)(2) (permitting court to relieve party from final judgment based on newly-discovered evidence).

And any inconvenience to the Court would be outweighed by the Court's interest in fairness. "Although promptness in judicial administration is highly desirable, delay may sometimes be necessary to the mission of doing justice. We are all too often reminded that 'justice delayed is justice denied.' But, it is equally true that in some situations, 'justice rushed is justice crushed.'" *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 219 (3d Cir. 2003) (reversing dismissal where plaintiff asserted privilege and district court refused to grant a stay).  A stay here would therefore allow the Court to fairly adjudicate this action on its merits.

### e.    The Interests of the Public Would Not be Adversely Affected by a Stay

Lastly, the interests of the public and persons not parties to the civil litigation would not be adversely affected by a stay. Indeed, the public interest may even be furthered by a stay, as the facts and circumstances of the alleged incident would be better evaluated by the Court and all parties with the help of the officers' testimony and the benefit of the documents, evidence, and information created and obtained in response to the incident. The public also has a strong interest in permitting the State Attorney's Office to investigate this case in the ordinary course of business, with the attendant secrecy that accompanies criminal investigations. But because "civil discovery rules are quite broad, they would permit discovery that likely will interfere with the criminal investigation." *Halliday v. Spjute*, No. 07-00620-CIV, 2008 WL 5068588, at *4 (E.D. Cal. Nov. 25, 2008). Thus, "the risk of compromising the criminal case can be avoided by staying the civil suit." *Id.*

As the Supreme Court has held, delay is justified "if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256; *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing

15

the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims and liabilities."). Staying the proceedings here "would benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity." *Healthsouth Corp.*, 261 F. Supp. 2d at 1325.

## <u>CONCLUSION</u>

All of the relevant factors in this case weigh in favor of granting a stay of these proceedings. Neither the parties, the public, nor other persons would be prejudiced by a stay. On the contrary, denying a stay would substantially and irreparably prejudice all parties because they would be required to litigate this case without access to critical investigative information. Therefore, the Court should stay these proceedings, including all discovery, and administratively close the case until the related criminal and administrative investigative proceedings are concluded. By granting a stay, the Court exercises its inherent discretionary power to assure the parties and the public of a fair and just adjudication of this case.

Dated: May 1, 2019

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida  33128

By:  *s/ Bernard Pastor*
Bernard Pastor
Fla. Bar. No. 46582
Assistant County Attorney
e-mail: pastor@miamidade.gov
Phone: (305) 375-5151
Fax:  (305) 375-5634

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(a)(3) of the Local Rules of the Southern District of Florida, undersigned counsel certifies that she has conferred with opposing counsel and Plaintiff <u>does not oppose</u> the relief sought here.

<u>*s/ Bernard Pastor*</u>
Assistant County Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*s/ Bernard Pastor*</u>
Assistant County Attorney

17