UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No.: 19-cv-21351CIV-MARTINEZ

DYMA LOVING,
     Plaintiff,

v.

MIAMI-DADE COUNTY, *et al.,*
     Defendants.

_____/

## PLAINTIFF'S AMENDED COMPLAINT

PLAINTIFF, Dyma Loving, hereby files this Amended Complaint against the Defendants Miami-Dade County, Florida ("Miami-Dade"), Miami-Dade County Police Sergeant Jorge Ferrer ("Ferrer"), Alejandro Giraldo ("Giraldo"), and Miami-Dade County Police Officer Juan Calderon ("Calderon"), and states as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees.

2.     Venue is proper in Miami-Dade County, Florida because the arrest and deprivation of civil rights from which this cause of action arises occurred in Miami-Dade County, Florida.

3.     This lawsuit arises out of Defendants' violation of Plaintiff's federal constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983. Plaintiff also has viable state law claims.

4.     Jurisdiction is vested in this Court pursuant to 28 U.S.C § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

5.     This court has supplemental jurisdiction over state law claims through the operation of 28 U.S.C. § 1367.

## PARTIES

6.     Plaintiff, Dyma Loving (hereinafter "Ms. Loving") is sui juris and was at all relevant times an adult resident of Miami-Dade County, Florida.

7.     Defendant, Miami-Dade County, Florida, is a municipal corporation and governmental subdivision that is organized and existing under the laws of the State of Florida located in Miami-Dade County, Florida. The County owns, operates, manages, directs and controls the Miami-Dade County Police Department.

8.     At all relevant times, Defendant Giraldo was an employee of the Miami-Dade County Police Department and Miami-Dade County, and upon information and belief is a resident of Miami-Dade County, Florida.

9.     At all relevant times, Defendant Ferrer was an employee of the Miami-Dade County Police Department and Miami-Dade County, and upon information and belief is a resident of Miami-Dade County, Florida.

10.     At all relevant times, Defendant Calderon was an employee of the Miami-Dade County Police Department and Miami-Dade County, and upon information and belief is a resident of Miami-Dade County, Florida.

11.     Defendant Miami-Dade County was at all relevant times responsible for its employees. Miami-Dade County is charged under law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the Constitutions of the State of Florida and of the United States, as well as the laws of said sovereigns.

12.     Miami-Dade County and its officers are "persons" for purposes of 42 U.S.C. Section 1983.

13.     At all times relevant to this cause, Giraldo, Ferrer, and Calderon acted in conformance with official or unofficial policy pertaining to, among other things, investigation, arrests, and use of force, as set by Defendant Miami-Dade County through the Miami-Dade County Police Department, as well as acting within the course and scope of their employment. At all times, the Defendants acted under color of law.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

14.     On March 5, 2019, at approximately 9:59 AM, Ms. Adriana Green called 911 to report that a neighbor had threatened to shoot her and Ms. Loving and that said neighbor had subsequently pointed a shotgun at Ms. Loving.

15.     Several minutes later Miami-Dade County Police Field Training officer Cassandra Bissett and Miami-Dade County Probationary Police Officer Modesto Lourido arrived on scene and interviewed Ms. Loving and Ms. Green.

16.     Miami-Dade County Police Field Training officer Daniel Ramos-Aviles and Miami-Dade County Probationary Police Officer Citia Easterling subsequently arrived at the scene and interviewed Ms. Loving and Ms. Green.

17.     At approximately 10:12 AM, several minutes after the arrival of officers Ramos-Aviles and Easterling, Giraldo and Calderon arrived at the scene and shortly thereafter began to interview Ms. Loving and Ms. Green.

18.     Though Ms. Loving and Ms. Green were the victims of an aggravated assault with a deadly weapon who had called for emergency assistance, and despite the fact that officers Bissett,

3

Lourido, Ramos-Aviles and Easterling had already spoken to both victims, Giraldo aggressively questioned Ms. Loving and Ms. Green.

19.     Ms. Loving and Ms. Green, both visibly upset from the traumatic experience of having a shotgun pointed at them, tried to explain to the officers what happened.

20.     During the interview, Giraldo flippantly asked Ms. Loving if she knew what the color of the shotgun was, clearly dismissive of her account of having a shotgun pointed in her face.

21.     During her questioning by Giraldo, Ms. Loving made several requests for an opportunity to call her sick child. At one point, she stated "I had a gun pointed in my face, I just want to call my kids."

22.     Giraldo never gave Ms. Loving the opportunity to call her child. Instead, he continued to question her while repeatedly demanding that she calm down, seeming oblivious to the fact that Ms. Loving had only minutes before had a shotgun pointed at her. In one chilling exchange, after Ms. Loving informed the officers that her daughter whom she wanted to call was sick, Giraldo threatened that Ms. Loving "needs to be Baker acted . . . ."

23.     Within ten minutes of Giraldo and Calderon's arrival at the scene they arrested Ms. Loving, ostensibly for disorderly conduct and resisting officer without violence to his person, despite Ms. Loving being under extreme emotional distress and simply requesting to make contact with her children.

24.     Ms. Loving's statements that she wished to call her children and that her children were sick constitute protected speech.

25.     Body camera worn by Giraldo and Ms. Green's cell phone video did not capture any acts of disorderly conduct by Ms. Loving nor any actions constituting resisting arrest.

4

26.     Giraldo would later write in his sworn arrest affidavit that Ms. Loving would not obey commands. This assertion is demonstrably false, as demonstrated by Giraldo's own body worn camera footage, which shows no resistance or disobedience by Ms. Loving.

27.     Giraldo did not issue any lawful commands to Ms. Loving, and she was not uncooperative during the investigation.

28.     Giraldo falsely asserted in his sworn arrest affidavit that Ms. Loving "caused a scene" by screaming at the officers. Ms. Loving did not cause any scene, and in fact no crowd formed while she was being interrogated by Giraldo.

29.     Ms. Loving did not threaten the officers present at the scene in any way.

30.     Ms. Loving did not take any action that could be perceived as threatening.

31.     Ms. Loving did not incite any crowd to gather. She did not incite any onlookers to commit violent acts towards the officers, or otherwise interfere in the officers' investigation in any manner.

32.     On March 5, 2019, Giraldo and Calderon, acting within the course and scope of their employment arrested the Plaintiff, Ms. Loving for the following alleged criminal violations: Disorderly Conduct/ Breach of the Peace in violation of Florida Statute 877.03, a misdemeanor of the second degree; and Resisting an Officer without Violence, in violation of Florida Statute 843.02, a misdemeanor in the first degree.

33.     Giraldo fabricated evidence to justify arresting Ms. Loving by drafting and signing a sworn arrest affidavit containing materially misleading and false allegations against Ms. Loving. The arrest affidavit is clearly contradicted by video evidence from the body worn cameras worn by all officers present at the scene and by the video taken by Ms. Green on her cell phone.

34.     During her encounter with Giraldo and Calderon, Ms. Loving, was physically

attacked and violently manhandled by the officers that she called for help, unlawfully arrested, and falsely imprisoned. Ms. Loving was thereafter forced to spend 15 hours in jail.

35.     Ferrer arrived at the scene after Ms. Loving was arrested.

36.     Ferrer was at that time a Field Training Supervisor, tasked with supervising Field Training Officers like Giraldo as they provide field training to recruits. At the time of Ms. Loving's arrest, Ferrer had been working for the Miami-Dade County Police Department for over 20 years and had spent most of that time as a Field Training Officer.

37.     Ferrer ultimately approved the arrest affidavit written by Giraldo, despite the materially false and misleading statements made by Giraldo and the clear inconsistencies between that arrest affidavit and the video evidence Ferrer had available for review.

38.     Ferrer separately drafted a use of force report for the arrest of Ms. Loving. In his use of force report, Ferrer adopted Giraldo's materially false and misleading description of Ms. Loving's behavior and her arrest, despite the video evidence Ferrer had available for review. The use of force report, remarkably, asserts: "Although the available [body worn camera] footage was found to be consistent with the described application of force by Officer Giraldo, administrative and procedural deficiencies were noted and will require further supervisory action."

39.     The use of force report was directed to the attention of the Miami-Dade Police Department Director Juan J. Perez and was marked as received by the Professional Compliance Bureau on March 27, 2019.

40.     Soon after Giraldo and Calderon's illegal arrest of Ms. Loving, word of the arrest spread through news reports and social media.

41.     On March 14, 2019, Miami-Dade Police Department Director Juan J. Perez issued a statement on the Miami-Dade Police Department's official Twitter account about the incident.

In his statement, Director Perez announced that an "inquiry [had been] initiated which resulted in the involved officer being relieved of duty and of his role as a field training officer." Director Perez also announced that an investigation was "ongoing."

42. On March 20, 2019, the State of Florida announced a Nolle Prosequi on all charges against Ms. Loving stemming from this incident, upon finding just cause that Ms. Loving did nothing criminal that day.

43. On March 27, 2019, Director Perez spoke before the Miami-Dade County Community Relations Board. At the meeting, Director Perez once again addressed Giraldo's arrest of Ms. Loving, calling the incident "troubling." Director Perez described several departmental changes prompted by Ms. Loving's arrest.

44. On May 8, 2019, prosecutors from the Miami-Dade County State Attorney's Office filed a two-count information against Giraldo.

45. Count I asserted that Giraldo: "being a public servant or public contractor, did unlawfully, knowingly, and intentionally obtain a benefit for any person or to cause harm to another, falsify, or cause another person to falsify, any official record or official document, to wit: Miami-Dade Police Department Arrest Affidavit and Offense Incident Report . . . ."

46. Count II asserted that Giraldo: "did unlawfully commit battery upon DYMA LOVING by actually and intentionally touching or striking said person against said person's will and/or causing bodily harm . . . ."

47. Ferrer was deposed by the Miami-Dade County State Attorney's Office in connection with its case against Giraldo on October 15, 2019. Despite the charges that had been brought against Giraldo for his falsification of the police report and battery on Ms. Loving, and despite the clear discrepancies between the available body worn camera footage and the arrest

affidavit used to arrest Ms. Loving, Ferrer testified at deposition that Giraldo's fraudulent arrest affidavit accurately described the events surrounding Ms. Loving's arrest.

48.     Prior to his illegal arrest of Ms. Loving, Giraldo already had a history of violating Miami-Dade County Police Department's stated procedures, of preparing inaccurate and incomplete reports, of misrepresenting or falsifying reports, and of detaining individuals without probable cause.

49.     Despite being aware of Giraldo's history, defendant Miami-Dade County, acting through the Miami-Dade County Police department, failed to take sufficient steps to correct Giraldo's behaviors. Instead, Defendant Miami-Dade County rewarded Giraldo and acted to perpetuate his conduct by employing him as a Field Training Officer and entrusting him to train new police recruits.

50.     As a result of Giraldo and Calderon's illegal arrest and excessive use of force, Ms. Loving suffered injuries to her shoulder, arms, head, face, and legs. Ms. Loving has experienced painful, intermittent headaches that immediately began to occur after the actions of the Giraldo and Calderon. The moment she was racially profiled after calling 911 due to her life being placed in danger by Frank Tumm; physically attacked and violently manhandled by the officers that she had called for help; unlawfully arrested; falsely imprisoned and forced to spend 15 hours in jail; having to endure video of this violent attack going "viral" on the internet, with some iterations having near 1 million views.

51.     As a result of Giraldo and Calderon's illegal arrest and excessive use of force, Ms. Loving has suffered special damages, as she will be unable to obtain employment and housing equivalent to people who do not have a criminal record, along with emotional distress that may affect her for a lifetime.

52.     Giraldo and Calderon arrested Ms. Loving without probable cause *as a matter of fact* because Ms. Loving had not committed any offense whatsoever. She and her friend, Ms. Green, in fact, were the persons who called 911 in an attempt to report their lives being placed in peril by Frank Tumm. Ms. Loving was arrested due to Giraldo being unbalanced, unfit for his position and due to fabricated evidence that was disproved by video evidence from Ms. Green and from Giraldo's own body camera footage.

53.     Similarly, Giraldo and Calderon arrested Ms. Loving without probable cause *as a matter of law* because officers may not arrest a citizen when no crime has been committed or is in the process of being committed.

54.     Defendant Miami-Dade County, on or before March 14, 2019, and through its agents including Miami-Dade Police Department Director Juan J. Perez, had actual knowledge of the illegal arrest of Ms. Loving and her resulting physical, reputational, and emotional injuries. Defendant Miami-Dade County's knowledge of the incident prompted this Defendant to initiate at least one investigation of the matter, and by March 27, 2019, had resulted in the Defendant announcing, through its agent Miami-Dade Police Department Director Juan J. Perez, that certain corrective measures were being initiated.

55.     Ms. Loving has retained undersigned counsel for Plaintiff and has agreed to pay a reasonable fee for their services.

56.     Plaintiff has complied with all conditions precedent to this lawsuit, or those conditions, including Fla. Stat. § 768.28(6)(a), have been waived.

## ADDITIONAL FACTS AGAINST MIAMI-DADE COUNTY

57.     On information and belief, Officers in Miami-Dade County engage in a pattern and practice of arresting individuals for the Disorderly Conduct – Florida Statute § 877.03 – and

Resisting an Officer without Violence ("RWOV") – Florida Statute § 843.02 – despite lacking legal cause to do so.

58.     On information and belief, Defendant Miami-Dade County has failed to discipline or prosecute known incidents of officers arresting individuals for the charges of RWOV and Disorderly Conduct without legal cause.

59.     On information and belief, Miami-Dade County has failed to discipline or prosecute known instances of officers falsifying arrest affidavits and offense incident reports for the purposes of fabricating a legal basis to arrest individuals for the charges of RWOV and Disorderly Conduct.

60.     On information and belief, Defendant Miami-Dade County maintains an unwritten practice whereby supervising officers charged with reviewing the accuracy and sufficiency of arrest affidavits fail to take corrective action against officers who have falsified or misrepresented facts in their arrest affidavits.

61.     On information and belied, Defendant Miami-Dade County, through the Miami-Dade County Police Department, fosters an unwritten policy whereby its officers arrest individuals despite the knowledge that those individuals have not committed acts that legally constitute RWOV or Disorderly Conduct, or its officers, as a result of improper training, do not understand the requirements of the statutes criminalizing RWOV and Disorderly Conduct.

62.     This unwritten policy, and Defendant Miami-Dade County's failure to properly train its officers, results in individuals being arrested without just cause and in violation of their constitutional rights.

63.     On information and belief, the illegal arrest and excessive force to which Ms. Loving was subjected was consistent with an institutionalized practice of the Miami-Dade County Police Department, which was known to and ratified by Defendant Miami-Dade County. Miami-

Dade County did not take any effective action to prevent Defendants Giraldo, Calderon and Ferrer from continuing to engage in such misconduct.

64.     Upon information and belief, Defendant Miami-Dade County, through the Miami-Dade County Police Department, have maintained a system of review of police conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable excessive and unlawful use of force by police officers.

65.     As a direct and proximate result of the deliberate indifference of Defendant Miami-Dade County to prevent or change unconstitutional policies, customs and practices, Ms. Loving suffered injuries and damages, including:

> a. Violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of her person, to be afforded due process of law and equal protection under the law;
>
> b. Loss of physical liberty; and
>
> c. Physical injury, humiliation, emotional distress, pain and suffering.

**COUNT I: FALSE ARREST AND FALSE IMPRISONMENT UNDER FLA. STAT §787.02**

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that the Defendants Miami-Dade County, and Defendants Giraldo, Ferrer and Calderon, individually, did the following:

66.     On March 5, 2019, Giraldo and Calderon, acting in the course and scope of their duties as police officers employed by the Miami-Dade County Police Department, arrested Ms. Loving. Ferrer, acting in the course and scope of his duties as a police officer employed by the

Miami-Dade County Police Department, approved the falsified arrest affidavit which resulted in Ms. Loving's continued unlawful detention and subsequently her imprisonment.

67.     Giraldo, Ferrer and Calderon caused Ms. Loving to be forcibly confined and deprived of her freedom and liberty. Each of the Defendants' acts were done for the purpose of imposing a confinement of Ms. Loving, or with knowledge that such confinement would, to a substantial certainty, result from it, which occurred at the scene of the arrest, and continued on to the jail where Ms. Loving was imprisoned.

68.     Ms. Loving did not consent to the aforementioned activities of Giraldo, Ferrer and Calderon and such actions were against the will of Ms. Loving.

69.     Giraldo, Ferrer and Calderon had no lawful authority to restrain, confine, or imprison Ms. Loving. Ms. Loving's arrest was unlawful and unreasonable in that it was not based on lawfully issued process of Court, and the officers did not have a valid warrant or probable cause for the arrest of Ms. Loving.

70.     Giraldo, Ferrer and Calderon proximately caused Ms. Loving's arrest without probable cause as a matter of law because she had not committed any offense that would justify arrest.

71.     As a proximate and direct result of the foregoing acts, Ms. Loving has suffered grievously, has been brought into public scandal with great humiliation and damage to her reputation and has suffered deprivation of her liberty and freedom, severe mental and emotional suffering arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of her body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of capacity for the enjoyment of life, the expense of medical care and treatment,

loss of earnings, diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiff Ms. Loving demands judgment for damages against Defendants, Miami-Dade County, Alejandro Giraldo, Jorge Ferrer and Juan Calderon for compensatory damages, special damages, and costs of this action, and demands trial by jury on all issues so triable.

### COUNT II: MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendants Giraldo, Ferrer and Calderon, individually, did the following:

72.     On March 5, 2019, Giraldo and Calderon, acting under the color of law, arrested Ms. Loving for Disorderly Conduct/Breach of the Peace in violation of Florida Statute 877.03, a misdemeanor in the second degree; and Resisting an Officer without Violence, in violation of Florida Statute 843.02, a misdemeanor in the first degree.

73.     After arresting Ms. Loving, Giraldo and Ferrer, acting under the color of law, caused a judicial proceeding to be commenced against Plaintiff Ms. Loving by the filing of a probable cause affidavit in Miami-Dade County, Florida.

74.     As a result of the actions of Giraldo, Calderon and Ferrer, Ms. Loving was charged in the Eleventh Judicial Circuit Court of Florida with the criminal offenses of Disorderly Conduct/Breach of the Peace, in violation of Florida Statute 877.03, a misdemeanor in the second degree; and Resisting Officer without Violence to his person, in violation of Florida Statute 843.02, a misdemeanor in the first degree.

75.     Said judicial proceeding was instituted by Giraldo, Ferrer and Calderon without probable cause as Ms. Loving did not commit a crime in the officers' presence or otherwise. The

13

facts observed by Giraldo, Ferrer and Calderon prior to arresting Ms. Loving, and the matters known to them before institution of the aforementioned judicial proceeding, would not have warranted a reasonable person to believe that any criminal offense had been committed by Ms. Loving.

76.     There was an absence of probable cause for the original proceedings against Ms. Loving.

77.     Giraldo, Ferrer and Calderon acted with malice in instituting the foregoing judicial proceeding which is implied by the lack of probable cause, lack of investigation, refusal to interview witnesses, and/or with express malice as shown by their reckless disregard of the Plaintiff's rights and their personal animosity and hostility towards Ms. Loving.

78.     No arrest would have taken place and no charges would have been filed but for the actions of Giraldo, Ferrer and Calderon.

79.     The termination of the original proceedings constituted a bona fide termination of those proceedings in favor of Ms. Loving that resulted in a Nolle Prose upon a finding that the Giraldo, Ferrer and Calderon lacked the necessary probable cause and were less than truthful about the events that occurred.

80.     The facts of Plaintiff's prosecution became known to many persons both known and unknown to Plaintiff as a result of being made part of the public records of Miami-Dade County, Florida and appearing on court documents available to public scrutiny, along with the notoriety from social media.

81.     As a proximate and direct result of the conduct of Giraldo, Ferrer and Calderon, Ms. Loving was brought into public scandal with great humiliation and damage to her reputation and has been deprived of her liberty and freedom. Ms. Loving suffered damages, including severe

mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of her body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future, and she incurred attorney's fees and court costs.

WHEREFORE, Plaintiff Ms. Loving demands judgment for damages against Miami-Dade County, and Alejandro Giraldo, Jorge Ferrer and Juan Calderon, individually, for compensatory damages, special damages, costs of this action, and attorney's fees, pursuant to 42 U.S.C. Sections 1983 and 1988, and demands trial by jury on all issues so triable.

<b><u>COUNT III: NEGLIGENT HIRING OR RETENTION</u></b>

<b><u>UNDER 42 U.S.C. SECTION 1983</u></b>

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendant Miami-Dade County did the following:

82. Defendant, Miami-Dade County, knew or should have known that Giraldo and Ferrer and Calderon were dangerous and incompetent and liable to do harm to citizens or residents of Miami-Dade County, Florida.

83. Defendant, Miami-Dade County, failed to conduct a reasonable investigation regarding the competence of Giraldo and Ferrer and Calderon to be employed as police officers for the Miami-Dade County Police Department.

84.     Defendant, Miami-Dade County, failed to conduct a reasonable investigation regarding the competence of Giraldo to be employed as a field training officer for the Miami-Dade County Police Department.

85.     Defendant, Miami-Dade County, failed to conduct a reasonable investigation regarding the competence of Ferrer to be employed as a field training supervisor for the Miami-Dade County Police Department.

86.     Defendant, MIAMI-DADE COUNTY, during the course of employment of Giraldo, Ferrer, and Calderon became aware or should have become aware of problems with Giraldo, Ferrer, and Calderon that indicated their unfitness or predisposition to wrongdoing, but failed to take further action such as investigating, discharging or reassignment of these officers.

87.     Defendant, Miami-Dade County, owed Ms. Loving, as well as all residents of Miami-Dade County, a duty of care to hire and retain only competent officers.

88.     Defendant, Miami-Dade County, breached its duty of care to Ms. Loving by hiring and retaining incompetent officers such as Giraldo, Ferrer, and Calderon.

89.     As a proximate and direct result of the negligence of Miami-Dade County, Ms. Loving suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of her body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiff Ms. Loving demands judgment for compensatory damages and

court costs against Miami-Dade County pursuant to 42 U.S.C. Sections 1983 and 1988 and requests trial by jury on all issues so triable.

**COUNT IV: NEGLIGENT FAILURE TO TRAIN AND SUPERVISE**

**UNDER 42 U.S.C. SECTION 1983**

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendant Miami-Dade County did the following:

90.     Defendant, Miami-Dade County, owed the public, including Plaintiff, a duty to properly train and supervise its personnel regarding the improper use of authority and the appropriate procedures to follow when making an arrest for an alleged violation and proper use of force in making a lawful arrest.

91.     Defendant, Miami-Dade County, breached its duty of care to Plaintiff by deliberately failing to provide Giraldo, Ferrer and Calderon with proper and special training and supervision so that they could be prepared to lawfully execute the duties the County reasonably could expect them to perform during the course and scope of their employment – including making lawful arrests and the appropriate use of force for lawful arrests.

92.     Because of prior unlawful arrests for Disorderly Conduct and RWOV made by its police officers, Miami-Dade County knew that its police officers like Giraldo, Ferrer and Calderon needed additional training and supervision to prevent Fourth Amendment violations like those suffered by Ms. Loving.

93.     As a proximate result of Miami-Dade County's failure to provide adequate training and supervision to Giraldo, Ferrer and Calderon on the proper use of force for effecting arrests and the proper legal authority for making arrests, Giraldo, Ferrer and Calderon violated Ms. Loving's Fourth Amendment rights to be free from unlawful search, seizure and excessive force.

17

94.     As a proximate result of lack of training and supervision, Giraldo, Ferrer and Calderon arrested, falsely imprisoned, humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person.

95.     As a proximate result of such conduct, Ms. Loving sustained damages, including mental pain and suffering which continue to this day and are likely to continue into the future.

WHEREFORE, Ms. Loving demands judgment for compensatory damages and court costs against Miami-Dade County pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues to triable.

## COUNT V: FALSE ARREST/FALSE IMPRISONMENT CLAIM DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTIONS 1983 AND 1988

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendants Giraldo, Ferrer and Calderon, Individually, did the following:

96.     Giraldo, Ferrer and Calderon in all of their actions described in this complaint deprived Ms. Loving of her rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

97.     Giraldo, Ferrer and Calderon deprived Ms. Loving of her constitutional rights in a way that they fully understood, or should have understood, in that their actions were wrongful and in violation of the law. Giraldo, Ferrer and Calderon by direct or indirect procurement, personally caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

98.     The conduct of Giraldo, Ferrer and Calderon towards Ms. Loving was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth

Amendments and 42 U.S.C. Section 1983 to be free from arrest in the absence of probable cause, and to be free from unlawful searches of her person.

99.     As a result of the false arrest, Ms. Loving was deprived of her civil rights as guaranteed by the Fourth Amendment of the Constitution, suffered humiliation, degradation, apprehension for her bodily security, and other mental and emotional harms, which continue to this day and are likely to continue into the future.

100.    Ms. Loving is entitled to attorney's fees expended in this litigation pursuant to 42 United States Code Section 1988.

WHEREFORE, Plaintiff Ms. Loving demands judgment for compensatory and punitive damages against Alejandro Giraldo, Jorge Ferrer and Juan Calderon and in addition thereto, demands the award of attorney's fees and court costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands a trial by jury on all issues so triable.

## COUNT VI: DEPRIVATION OF CIVIL RIGHTS BY EXCESSIVE USE OF FORCE IN VIOLATION OF 42 U.S.C. SECTION 1983

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendant Miami-Dade County did the following:

101.    Giraldo, Ferrer and Calderon have at all times material hereto had a propensity to arrest individuals without lawful cause and to use excessive force in effecting arrests, which Miami-Dade County knew or should have known. Giraldo, Ferrer and Calderon perpetrated unlawful acts against Ms. Loving – arresting her without lawful cause and using excessive force in effecting her arrest – as police officers while working at the Miami-Dade County Police Department. Despite these officers' propensity and the Miami-Dade County's knowledge of this propensity, the Defendant Miami-Dade County did nothing to deter this behavior.

102.     The Defendant Miami-Dade County's and its officers' treatment of Ms. Loving constitutes a pattern of behavior by Miami-Dade County, which rises to the level of or implies conclusively the existence of a policy of allowing and passively encouraging, authorizing, or ratifying the unlawful arrest of individuals and the use of excessive force by its officers.

103.     The Defendant, Miami-Dade County, as a matter of policy and practice has with deliberate indifference failed to adequately discipline, train, or otherwise direct police officers concerning the rights of citizens thereby causing the defendant officers to engage in the unlawful conduct described above.

104.     The Defendant Miami-Dade County as a matter of policy and practice has with deliberate indifference failed to properly sanction or discipline their police officers including the defendants in this case for violations of the constitutional rights of citizens thereby causing police, including the defendants in this case, to engage in unlawful conduct.

105.     These patterns, and implied or explicit policies, have been ratified by the highest decision maker of Miami-Dade County's government leadership including the police, the chief, the mayor, county commissioners and/or high officials within the police department itself or other departments.

106.     This pattern and resultant policy acted to directly deprive Plaintiff Ms. Loving of her civil rights as guaranteed to her by the United States Constitution.

107.     In being deprived of her civil rights, Ms. Loving was injured as described above. In addition, Ms. Loving was deprived of her civil liberty and right to be free from such abuse at the hands of the government.

108.     Miami-Dade County, in all of its actions described in this complaint, deprived Ms. Loving of her rights under color of state law directly in violation of 42 U.S.C. Section 1983.

109.     Ms. Loving is entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Ms. Loving demands judgment and compensatory damages against the Defendant, MIAMI-DADE COUNTY, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

**COUNT VII: EXCESSIVE FORCE CLAIM COGNIZABLE**

**UNDER 42 U.S.C. SECTION 1983**

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendants Giraldo and Calderon, Individually, did the following:

110.     The force used by Giraldo and Calderon was unreasonable and unnecessary for those officers to defend themselves or any other person from bodily harm during the unlawful arrest of Ms. Loving. Giraldo and Calderon, acting under the color of law, intentionally used excessive and unlawful force in arresting Ms. Loving, in violation of her Fourth and Fourteenth Amendments right to be free from excessive and unreasonable force during arrest.

111.     As a direct and proximate result of the acts described above, Ms. Loving has suffered grievously and has been brought into public scandal and with great humiliation, mental suffering and damaged reputation which continues to this day and is likely to continue into the future.

112.     As a direct and proximate result of the acts described above, Ms. Loving has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization and medical care and treatment. The losses are either permanent or continuing and Ms. Loving will suffer losses into the future in violation of Ms. Loving's clearly established rights.

WHEREFORE, Plaintiff Ms. Loving demands compensatory and punitive damages, costs and reasonable attorney's fees pursuant to 42 U.S.C. Sections 1983 and 1988 and requests trial by jury on all issues so triable.

## COUNT VIII: BATTERY

Plaintiff Ms. Loving re-alleges paragraphs 1 through 65 and further states that Defendant Miami-Dade County did the following:

113.    On March 5, 2019, employees of Miami-Dade County Police Department, acting in the course and scope of their employment, did batter, touch and strike Ms. Loving without the consent of Ms. Loving, without lawful authority, and against her will.

114.    Defendant Miami-Dade County, through its employees Giraldo and Calderon, intentionally caused bodily harm to Ms. Loving by using excessive force upon her person, grabbing her against her will without lawful cause, slamming Ms. Loving into the ground and holding her down to the ground against her will.

115.    As a result of the actions of the Defendant Miami-Dade County through its employees Giraldo and Calderon, Ms. Loving suffered damages which include physical suffering, physical inconvenience, physical discomfort; aggravation of an existing medical condition; expense of medical care and treatment, loss of time, mental suffering, embarrassment, humiliation, disgrace, and injury to her reputation, the emotional damage and reputational damage are ongoing and will likely continue.

WHEREFORE, Ms. Loving demands judgment against Miami-Dade County for compensatory damages and costs of this action and demands trial by jury of all issues so triable.

## COUNTY IX: GROSS NEGLIGENCE

Plaintiff Ms. Loving, re-alleges paragraphs 1 through 65 and further states that Miami-

Dade County did the following:

116.    Miami-Dade County, in its employment of Giraldo, Ferrer and Calderon, was engaged in the exercise of discharge of a governmental function.

117.    The conduct of Miami-Dade County amounted to gross negligence through its wanton and reckless disregard for proper training and supervision of its officers that was the proximate cause of Ms. Loving's injuries and damages.

118.    Giraldo, Ferrer and Calderon were working for Miami Dade County, and the Miami-Dade County Police Department at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to Ms. Loving.

119.    Notwithstanding these duties, Defendant Miami Dade County breached these duties with deliberate indifference and gross negligence and without regard to Ms. Loving's rights and welfare through creating a working environment in which the excessive force, arrests without lawful cause, and falsification of arrest affidavits by police officers including Giraldo, Ferrer and Calderon was viewed as acceptable, which caused serious injuries and damages to Ms. Loving.

120.    Defendant Miami Dade County knew or should have known that by breaching these duties it would injure members of the public, including Ms. Loving.

121.    Defendant Miami Dade County had a duty to exercise reasonable care through sufficient training and supervision of police officers. Defendant Miami Dade County's breach of that duty was reckless and amounts to gross negligence.

122.    As a direct and proximate result of the indifferent and grossly negligent acts and/or omissions committed by Defendant Miami Dade County, Ms. Loving has suffered a multitude of injuries and numerous damages.

WHEREFORE, Plaintiff demands judgment against Defendant Miami Dade County for

damages and costs of this action and demands trial by jury of all issues so triable.

## PRAYER OR RELIEF

WHEREFORE, PLAINTIFF, DYMA LOVING, individually demands a trial by jury, and judgement against Defendants Miami Dade County, Alejandro Giraldo, Jorge Ferrer, in his individual and official capacity; Juan Calderon, in his individual and official capacity for special damages, damages for past, present, and future medical expenses, compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity, together with attorney's fees and court costs and such other relief the as the Court may deem just and proper.

Dated: July 18, 2023                     Respectfully submitted,


                                         RODRIGUEZ TRAMONT & NUÑEZ, P.A.
                                         *Counsel for Plaintiff, Dyma Loving*

                                         */ Andrew V. Tramont*
                                         Andrew V. Tramont
                                         Florida Bar No. 322830
                                         Stephanie T. Núñez
                                         Florida Bar No. 99588
                                         Paul M. Núñez
                                         Florida Bar No. 124205