UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 19-cv- 21351-MARTINEZ

DYMA LOVING,

     Plaintiff,

v.

MIAMI DADE COUNTY, FLORIDA, ALEJANDRO GIRALDO,
J.F. CALDERON,

     Defendants.

_____/

## MOTION FOR MORE DEINITE STATEMENT
## ON BEHALF OF J.F. CALDERON

The Defendant, **J.F. CALDERON,** in his individual capacity, and in accordance with *Rule12 (e), Federal Rules of Civil Procedure* and this Court's order granting Plaintiff's motion to amend complaint dated July 13, 2023 **[ECF No. 50],** and Plaintiff's Amended Complaint dated July 18, 2023 **[ECF No.51],** and sets forth the following:

**Background:**

Plaintiff filed an amended complaint consisting of 122 numbered paragraphs comprising nine counts, to wit:

*Count 1- False Arrest and False Imprisonment under F.S. 786.02 [against individual officers];*

*Count II-Malicious Prosecution under 42 U.S.C. Section 1983[ against individual officers];*

Count III-Negligent Hiring or Retention under 42 U.S.C. Section 1983;

Count IV- Negligent Failure to Train and Supervise 42 U.S.C. Section 1983;

*Count V- False Arrest/Imprisonment Claim Deprivation of Civil Rights under 42 U.S.C. Sections 1983 and 1988 [against the individual officers];*

CASE NO: 19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

Count VI- Deprivation of Civil Rights by Excessive Force in Violation of 42 U.S.C. Section 1983;

**Count VII- Excessive Force Claim Cognizant under 42 U.S.C. Section 1983 [against the individual officers];**

Count VIII- Battery;

In the section of the Amended Complaint entitled GENERAL ALLEGATIONS

COMMON TO ALL COUNTS, Plaintiff alleges:

26. Giraldo would later write in his sworn arrest affidavit that Ms. Loving would not obey commands. This assertion is demonstrably false, as demonstrated by Giraldo's own body worn camera footage, which shows no resist ance or disobedience by Ms. Loving. Giraldo did not issue any lawful commands to Ms. Loving  and she was not uncoo perative during the investigation.

27. Giraldo falsely asserted in his sworn arrest affidavit that Ms. Loving caused a scene by screaming at the officers. Ms. Loving did not cause any scene, and in fact no crowd formed while she was being interrogated by Giraldo.

\*   \*   \*

31. On March 5, 2019, Giraldo and Calderon , acting within the course and scope of their employment arrested the Plaintiff, Ms. Loving for the following alleged criminal violations: Disorderly Conduct/ Breach of the Peace in violation of Florida Statute 877.03, a misdemeanor of the second degree; and Resisting an Officer without Violence, in violation of Florida Statute 843.02, a misdemeanor in the first degree.

32. Giraldo fabricated evidence to justify arresting Ms. Loving by drafting and signing a sworn arrest affidavit containing materially misleading and false allegations against Ms. Loving The arrest affidavit is clearly contradicted by video evidence from the body worn cameras worn by all officers present at the scene and by the video taken by Ms. Green on her cell phone.

\*   \*   \*

35. Ferrer ultimately approved the arrest affidavit written by Giraldo, despite the

2

CASE NO:  19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

materially false and misleading statements made by Giraldo and the clear
inconsistencies between that arrest affidavit and the video evidence Ferrer had
available for review.

36. Ferrer separately drafted a use of force report for the arrest of Ms. Loving. In his
use of force report, Ferrer adopted Giraldo's materially false and misleading description
of Ms.Loving's behavior and her arrest, despite the video evidence Ferrer had available
for review. The use of force report, remarkably, asserts.  "Although the available [body
worn camera] footage was found to be consistent with the described application of force
by Officer Giraldo, administrative and procedural deficiencies were noted and will
require further supervisory action."The use of force report was directed to the attention
of the Miami -Dade Police Department Director Juan J.Perez and was marked as
received by the Professional Compliance Bureau on March 27, 2019.

37. Soon after Giraldo and Calderon's illegal arrest of Ms. Loving, word of the arrest
spread through news reports and social media

*   *   *

41. On May 8, 2019, prosecutors from the Miami-Dade County State Attorney's
Office filed a two –count information against Giraldo
.
42. Count I asserted that Giraldo: "being a public servant or public contractor, did
unlawfully, knowingly, and intentionally obtain a benefit for any person or to cause harm
to another, falsify, or cause another person to falsify, any official record or official
document, to wit: Miami-Dade Police Department Arrest Affidavit
and Offense Incident Report. . . ."

43. Count II asserted that Giraldo: "did unlawfully commit battery upon DYMA
LOVING by actually and intentionally touching or striking said person against said
person's will and/or causing bodily harm  . . ."

**The law and argument:**

Rule 12 (e) provides:

MOTION FOR A MORE DEFINITE STATEMENT. A party may move
for a more definite statement of a pleading to which a responsive
pleading is allowed but which is so vague or ambiguous that the
party cannot reasonably prepare a response. The motion must be
made before filing a responsive pleading and must point out the

3

CASE NO: 19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

defects complained of and the details desired. If the court orders
a more definite statement and the order is not obeyed within 14
days after notice of the order or within the time the court sets,
the court may strike the pleading or issue any other appropriate
order

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) further provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence ... be stated in a separate count ...." Id. The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading." *Weiland* , 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.* , 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). These rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant. *Id.* (quoting *T.D.S.* , 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

4

CASE NO: 19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

In *Clifford v. Federman*, (Case No. 20-12294, 11th Cir. 2021)[1]/ at pages 6-7, the

court stated, in a *per curiam* decision,

> Appellants assert that both district judges abused their discretion in
> striking Appellants' Original Complaint and dismissing Appellants' First Amended
> Complaint on shotgun pleading grounds. Shotgun pleadings violate Federal Rule
> of Civil Procedure 8(a)(2)'s "short and plain statement" requirement by "failing . .
> . to give the defendants adequate notice of the claims against them and the
> grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d
> 1291, 1294-95 (11th Cir. 2018) (quotations and alteration omitted). Shotgun
> pleadings are characterized by: (1) multiple counts that each adopt the
> allegations of all preceding counts; (2) conclusory, vague, and immaterial facts
> that do not clearly connect to a particular cause of action; (3) failing to separate
> each cause of action or claim for relief into distinct counts; or (4) **combining
> multiple claims against multiple defendants without specifying which
> defendant is responsible for which act.** *Weiland v. Palm Beach Cty. Sheriff's
> Ofc.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Dismissal of a
> complaint as a
> shotgun pleading is warranted where "it is virtually impossible to know which
> allegations of fact are intended to support which claim(s) for relief," where the
> failure to "more precisely parcel out and identify the facts relevant to each claim
> materially increase[s] the burden of understanding the factual allegations
> underlying each count," or where the complaint indiscriminately lumps together
> multiple defendants without specifying how each is responsible for acts or
> omissions that give rise to a claim for relief. *Id.* at 1323-25 (quotations and
> emphasis omitted). **[Emphasis added by undersigned]**

The importance of knowing what defendant CALDERON specifically did is

grounded in his right to assert his immunity from suit.

As noted in *Benjamin v. City of Miami* (Case No. 17-14186, 11th Cir. 2018)[2]/, citing

*Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003),  "Once the affirmative defense

---

1 /  A copy of the decision is attached as it is an unpublished opinion.

2  /  A copy of the decision is attached as it is an unpublished opinion.

of qualified immunity is advanced[,] unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."

While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss. *See Chesser v. Sparks,* 248 F.3d 1117, 1121 (11th Cir.2001). The motion to dismiss will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *Id.* (citing *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir.1997)). Whether the complaint alleges such a violation is a question of law that is reviewed de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Id. See, St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002). *See, also Johnson v. Breeden,* 280 F.3d 1308, 1317 (11th Cir. 2002) ('[A] valid defense based upon [qualified immunity] must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage of the litigation.')."

This is so because the affirmative defense of qualified immunity "completely protects" government officials performing discretionary functions from suit in their individual capacities, unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003).

6

CASE NO:  19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

If the Plaintiff has no specific facts giving rise to a violation of a clearly
established statute or constitutional right committed by this individual defendant, this
defendant CALDERON should not be required to engage in this litigation without the
ability to challenge the charges made by Plaintiff through his right to claim qualified
immunity.

**Conclusion:**

The Defendant CALDERON is entitled to know what Plaintiff accuses him of and
what specific damages are a result of those actions.  Defendant CALDRON seeks the
granting of his motion for a more definite statement as to him before he is required to
file his responsive pleading to the Amended Complaint.

Dated: July 19 , 2023.

Respectfully submitted,

Rhea P. Grossman, Esq.
Florida Bar. No. 092640
Counsel for **J.F. CALDERON**
2650 West State Road 84, Suite 102
Fort Lauderdale, Florida 33312
Phone:  (954) 587-8488
E-mail:  rheagrossman@comcast.net

CASE NO:  19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

CASE NO:  19-cv-21351-MARTINEZ
Calderon's Motion for More Definite Statement

## **SERVICE LIST**
*Loving v. Miami-Dade County, et al*
United States District Court, Southern District of Florida
Case No. 19-cv-21352-MARTINEZ

Andrew V. Tramont, Esq.                              Attorney for Plaintiff
RODRIGUEZ TRAMONT & NUNEZ
255 Alhambra Circle, Ste 1150
Coral Gables, FL 33134
305-350-2300
havt@rtgn-law.com
*Service by CM/ECF*

Jennifer Hochstadt, Esq.
Office of County Attorney                             Co- Counsel for Miami-Dade County
111 Northwest First Street, Ste 2810
Miami, FL 33128-1993
305-375-5151
Hochsta@miamidade.gov
*Service by CM/ECF*

Bernard Pastor, Esq.
Office of County Attorney                             Co- Counsel for Miami-Dade County
111 Northwest First Street, Ste 2810
Miami, FL 33128-1993
305-375-5151
pastor@miamidade.gov
*Service by CM/ECF*

Teri Guttman Valdes, Esq.                            Counsel for Alejandro Giraldo
Teri Guttman Valdes LLC
1501 Venera Ave., Suite 300
Coral Gables, FL 33146
305-740-9600
tgvaldes@aol.com

Rhea P. Grossman, Esq.
2650 West State Road 84, Suite 102                  Counsel  for J.F. Calderon.
Fort Lauderdale, Florida 33312
(954) 587-8488
rheagrossman@comcast.net
*Service by CM/ECF*

9

**JOHN CLIFFORD, Plaintiff, CRAIG CLIFFORD, SCOTT CLIFFORD, PAUL CLIFFORD, STEPHEN DAZZO, JERSEY CORD CUTTERS, LLC, KASOLAS FAMILY & FRIENDS VG INVESTMENT, LLC, CHRISTINE C. CLIFFORD, as administrator of the estate of John Clifford, Plaintiffs - Appellants,**

v.

**RICHARD FEDERMAN, WINSTON JOHNSON, GOTHAM MEDIA CORPORATION, GOTHAM MEDIA SERVICES, INC., WINSONIC DIGITAL MEDIA GROUP, LTD., WINSONIC DIGITAL CABLE SYSTEMS NETWORK, LTD., JUSTIN SU, LORI POOLE, ROBERT KOSTENSKY, TODD GUTHRIE, TECH CXO, LLC, PATRICK SHAW, RICKSHAW PRODUCTIONS, LLC, DARYL ARTHUR, MEGATONE MUSIC, LLC, KRISTY THURMAN, KT COMMUNICATIONS CONSULTING, INC., 2251 LAKE PARK INVESTMENT GROUP LLC, DOC MAANDI MOVIES LLC, DMM-EXPENDABLES 3 LLC, MAANDI MEDIA PRODUCTIONS DIGITAL LLC, MAANDI ENTERTAINMENT LLC, MAANDI MEDIA PRODUCTIONS LLC, MAANDI PARK MS LLC, MAANDI MEDIA HOLDINGS INTERNATIONAL LLC, KIMBERLYTE PRODUCTIONS SERVICES, INC., 2496 DIGITAL DISTRIBUTION LLC, 1094 DIGITAL DISTRIBUTION LLC, SST SWISS STERLING, INC., HEATHER CLIPPARD, ROBERT HALF INTERNATIONAL INC., d.b.a. The Creative Group, d.b.a. Robert Half Technology, et al., WINSONIC DIGITAL MEDIA CABLE SYSTEMS HOLDINGS, INC., et al.,**

**CASCADE NORTHWEST, INC., Defendants - Appellees.**

**No. 20-12294**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**May 5, 2021**

[DO NOT PUBLISH]

Non-Argument Calendar

D.C. Docket No. 1:18-cv-01953-JPB

Page 2

Appeal from the United States District Court for the Northern District of Georgia

Before WILSON, ROSENBAUM, and BLACK, Circuit Judges.

PER CURIAM:

Page 3

Craig Clifford, Scott Clifford, Paul Clifford, Stephen Dazzo, Jersey Cord Cutters, LLC, Kasolas Family & Friends VG Investment, LLC, and Christine C. Clifford, as administrator of the estate of John Clifford (collectively, Appellants) appeal the district court's striking and dismissal of their Original and First Amended Complaints on shotgun pleading grounds and the district court's denial of their motion for reconsideration. After review,[1] we affirm the district court.

I. BACKGROUND

On May 3, 2018, Appellants filed their 195-page, 50-count[2] Original Complaint against 42 defendants. The Original Complaint alleged generally that the Appellees committed fraud when they solicited investments for a "fictitious and non-existent" internet television service trademarked as "VIDGO" and later used those investments to fund personal projects unrelated to the purported business venture. Many of the



Appellees moved to strike or dismiss the Original Complaint on shotgun pleading grounds. On March 22, 2019, after "engag[ing] in the painstaking task of wading through and deciphering [Appellants'] tangled mess of allegations to determine the merits of the [Appellees'] pending motions," Judge

Page 4

Amy Totenberg granted the Appellees' motions to strike the Appellants' Original Complaint based on shotgun pleading grounds and directed the Appellants to replead their complaint with certain parameters:

> (1) [Appellants] may not incorporate all 312 factual paragraphs into each count. [Appellants] instead must indicate which of the factual paragraphs are alleged to support each individual count alleged.

> (2) Each individual count may only be based on a single legal claim or legal basis for recovery (i.e. [Appellants] may not assert "Legal Fraud, Fraud in the Inducement, and Alter-Ego Liability" together in the same count).

> (3) [Appellants] are permitted to assert a single count against multiple defendants; however, [Appellants] must identify what precise conduct is attributable to each individual defendant separately in each count.

> (4) As to Count 24 (Securities Fraud): [Appellants] must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA).

> (5) As to Counts 28 through 46 (Fraud) and Count 51 (Intentional Misrepresentation): [Appellants] must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Appellants filed their First Amended Complaint on April 23, 2019. The First Amended Complaint contained 258 pages and 52 counts against 36 defendants. As with the Original Complaint, many Appellees moved to dismiss the First Amended Complaint on shotgun pleading grounds. The case was reassigned to Judge J.P. Boulee in June of 2019. On January 7, 2020, Judge Boulee found that the First Amended Complaint was a "quintessential shotgun

Page 5

pleading of the kind the Eleventh Circuit has condemned repeatedly." Judge Boulee stated it was "virtually impossible to know which allegations of fact are intended to support which claims of relief since each cause of action incorporates more than 200 paragraphs." He found that Appellants failed to correct the pleading deficiencies identified by Judge Totenberg—specifically identifying which facts support each individual count alleged and adequately identifying the precise conduct attributable to each defendant. He concluded that Appellants' method of pleading was no clearer than it was in the Original Complaint and remained an impermissible shotgun pleading.

Judge Boulee also stated that Judge Totenberg had "thoroughly explained to [Appellants] why the Original Complaint violated the shotgun pleading rule," and provided notice of the defects. However, because the Appellants "did not meaningfully amend their Original Complaint," Judge Boulee determined they should not be afforded another opportunity to amend. Thus, the court granted the motions to dismiss based on shotgun pleading grounds and dismissed the case with prejudice.

Appellants filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60. On June 15, 2020, the district court rejected



Appellants' arguments and denied the motion for reconsideration.

Page 6

II. DISCUSSION

*A. Shotgun Pleading*

Appellants assert that both district judges abused their discretion in striking Appellants' Original Complaint and dismissing Appellants' First Amended Complaint on shotgun pleading grounds. Shotgun pleadings violate Federal Rule of Civil Procedure 8(a)(2)'s "short and plain statement" requirement by "failing . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (quotations and alteration omitted). Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act. *Weiland v. Palm Beach Cty. Sheriff's Ofc.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Dismissal of a complaint as a shotgun pleading is warranted where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," where the failure to "more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count," or where the

Page 7

complaint indiscriminately lumps together multiple defendants without specifying how each is responsible for acts or omissions that give rise to a claim for relief. *Id.* at 1323-25 (quotations and emphasis omitted).

In dismissing a shotgun complaint, a district court must give the plaintiffs one chance to remedy its deficiencies. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018). "What matters is function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them. If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Id.*

This Court, like the two district judges before us, has now "engaged in the painstaking task of wading through and deciphering [Appellants'] tangled mess of allegations." After that review, we conclude the district court did not abuse its discretion in striking Appellants' Original Complaint or dismissing Appellants' First Amended Complaint as shotgun pleadings. As to the Original Complaint, the district judge did not abuse her discretion in striking their complaint as (1) the Appellants incorporated by reference 312 paragraphs of factual allegations into each of their 50 enumerated causes of action, (2) each cause of action incorporated by reference each and every prior cause of action, (3) many of the enumerated causes of action were actually comprised of multiple sub-causes of action, (4) each

Page 8

enumerated cause of action was asserted against multiple defendants, and (5) Appellants essentially accused all defendants of being responsible for all acts and omissions, so that no individual defendant could identify exactly what he or she did wrong. These deficiencies in the Original Complaint are the definition of a shotgun pleading, and the district court did not abuse its discretion in striking the complaint and giving the Appellants a chance to remedy the deficiencies. *See Jackson*, 898 F.3d at 1358.

The district court also did not abuse its discretion in dismissing Appellants' First Amended Complaint as a shotgun pleading. Even after Judge Totenberg gave Appellants explicit instructions on how to remedy the deficiencies in



the complaint, Appellants did not do so. While Appellants did not incorporate all 312 introductory paragraphs into each count, the majority of the 52 counts incorporated almost the entirety of the fact section of the complaint, consisting of 249 paragraphs and 104 pages. The complaint is cumbersome, requiring the reader to identify and sift through hundreds of paragraphs incorporated into each count, and then parse through numerous allegations to identify which of those hundreds of paragraphs have some relevance to a particular defendant or cause of action. It is virtually impossible to know which allegations of fact are intended to support which claims for relief when each cause of action incorporates more than 200 paragraphs. As Judge Boulee observed, "this method of pleading is in no manner

Page 9

any clearer than it was in the Original Complaint nor does it specifically identify the precise conduct attributable to each individual defendant." As Appellants had notice of the defects and a meaningful chance to fix them, it was not an abuse of discretion to dismiss the First Amended Complaint as a shotgun pleading. *See id.*

### B. Motion for Reconsideration

Appellants contend the district court abused its discretion in denying their motion for reconsideration. Appellants bring several points of error, which we address in turn.

#### 1. Dismissal of State Law Claims with Prejudice

Appellants contend the district court's dismissal of their state law claims with prejudice rather than without prejudice required reconsideration. They rely on our decision in *Vibe Micro*, where we remanded for the limited purpose of dismissing without prejudice as to refiling in state court any state law claims. *Vibe Micro*, 878 F.3d at 1296-97. "Although it is possible for the district court to continue to

exercise supplemental jurisdiction over these pendant claims . . . if the district court instead chooses to dismiss the state law claims, it usually should do so without prejudice as to refiling in state court." *Id.* at 1296 (citations omitted).

*Vibe Micro* is distinguishable from this case, however. This case is in federal court both on the basis of original federal question jurisdiction and diversity jurisdiction. Thus, any state law claims would be in federal court on the

Page 10

basis of diversity jurisdiction with or without federal questions. The reasoning for remanding in *Vibe Micro* was because the state law claims there were in federal court on the basis of supplemental jurisdiction, rather than diversity jurisdiction. *Id.* Thus, the district court did not abuse its discretion in denying reconsideration on this basis.

#### 2. Grounds for Dismissal with Prejudice

Appellants contend that no grounds exist for the extreme sanction of dismissal with prejudice. They rely on our decision in *Betty K., Ltd. v. M/V Monada, et al.*, 432 F.3d 1333, 1337-38 (11th Cir. 2005), providing that a dismissal with prejudice should be imposed only if a party engages in a clear pattern of delay or willful contempt and the district court specifically finds lesser sanctions would not suffice.

The district court did not abuse its discretion in dismissing Appellants' First Amended Complaint with prejudice. Specific to the shotgun pleading issue, we have held "[w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1296. Here, the district court followed the holding in *Vibe Micro*. When the Original Complaint was stricken, Appellants were given another chance to replead and remedy their shotgun



Page 11

pleading issues, but Appellants filed an equally unclear First Amended Complaint. The district court was not required to give Appellants any additional chances to remedy the pleading violations. *See id.* Therefore, the district court did not abuse its discretion in denying reconsideration on this basis.

### 3. Rule 8 and Rule 9(b)

Appellants also contend the district court abused its discretion by applying Rule 8 to the portion of the Amended Complaint asserting fraud-based claims, since Rule 9(b) governs fraud-based claims. While Rule 8 requires a "short and plain statement of the claim," Rule 9(b) requires "the circumstances constituting fraud or mistake shall be stated with particularity." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066-67 (11th Cir. 2007) (citing Fed. R. Civ P. 8 and 9(b)).

Although Appellants assert the district court should have evaluated their fraud claims solely under Rule 9(b), the requirement to plead with particularity does not allow them to evade Rule 8's requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). The district court did not abuse its discretion in denying reconsideration on this basis.[3]

Page 12

## III. CONCLUSION

We affirm the district court's dismissal of Appellants' case and denial of Appellants' motion for reconsideration.

**AFFIRMED.**

--------

Footnotes:

[1] We review a district court's dismissal of a complaint on shotgun pleading grounds for an abuse of discretion. *Vibe Micro, Inc. v.*

*Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). We also review a district court's denial of a motion for reconsideration for an abuse of discretion. *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1234 (11th Cir. 2020).

[2] The Original Complaint purports to contain 51 counts, but it does not contain a count 45.

[3] We reject Appellants' arguments that certain defendants could not oppose reconsideration on shotgun pleading grounds because they did not file motions to dismiss based on shotgun pleading arguments.

--------



**CORDARIUS BENJAMIN, Plaintiff - Appellee,**

v.

**CITY OF MIAMI, Defendant,**
**YAMIR BORREGO, Defendant - Appellant.**

No. 17-14186

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**April 6, 2018**

[DO NOT PUBLISH]

Non-Argument Calendar

D.C. Docket No. 1:14-cv-22800-MGC

Appeal from the United States District Court for the Southern District of Florida

Page 2

Before JULIE CARNES, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Yamir Borrego, a detective with the City of Miami Police Department, appeals the district court's order denying his motion to dismiss based on qualified immunity Cordarius Benjamin's Fourteenth Amendment substantive due process claim under 42 U.S.C. § 1983.[1] After careful review, we reverse.

I.

Benjamin's second amended complaint arose out of his arrest for an armed robbery he did not commit.[2] Three men robbed Wilmer Fonseca and his 12 year old stepdaughter in front of their home in Miami, Florida. Fonseca's stepdaughter immediately called the police and provided a description of the assailants. Police officers arrived on the scene and began investigating.

About an hour and a half after the robbery, while still in the neighborhood searching for the assailants, officers spotted Benjamin, a high school student on summer break, walking a few blocks away from Fonseca's home. The "officers approached [Benjamin] with their guns drawn and ordered him to lay face-down in

Page 3

the street." Second Am. Compl., Doc. 38 at 3.[3] The officers explained to Benjamin that he "fit the description of a robbery suspect and that they were going to transport him for a 'show up.'" *Id.*

At the show-up, Fonseca told the officers that Benjamin was not involved. Fonseca's stepdaughter, however, "claimed that [Benjamin] 'looked similar' to one of the robbers." *Id.* at 4. With this information, the officers transported Benjamin to the police station for an interview. While en route to the station, Benjamin asked his friend Stanley to contact someone in Stanley's guardian's law firm to represent him. Stanley called Hilton Napoleon, II, Esq., and told Napoleon that Benjamin "had been transported to the police station and requested an attorney." *Id.* Importantly, Benjamin did not allege that he ever told police of the call or that he wanted an attorney.

As alleged in the second amended complaint, Napoleon then sought to initiate contact with Benjamin and to prevent police from interviewing his prospective client without his presence. Napoleon "called the Miami Police Department Robbery Bureau and told them not to speak to [Benjamin] without his presence" and that he soon would be at the station. *Id.* "Detective Borrego answered the phone call from Napoleon and lied and told him that the interview had already commenced (which it had not), and that they planned to continue it, so

Page 4

long as [Benjamin] agreed to speak." *Id.* at 5 (footnote omitted). In fact, Benjamin's interview began more than an hour after Napoleon spoke with Borrego on the phone. Borrego refused to notify Benjamin that Napoleon was on his way,



telling Napoleon, "[i]t's your client's decision to speak to us, not yours." *Id.*

Napoleon again was rebuffed when he reached the station. Police at the station told Napoleon that Benjamin's interview had ended and that Benjamin was being transported to jail but, according to the second amended complaint, "[t]hat also was a lie" because Benjamin was still at the station and not interviewed until "almost one hour *after* Napoleon arrived at the station." *Id.* Napoleon made repeated additional requests to speak to or see Benjamin or discuss the matter with a member of the robbery unit, but his attempts were unsuccessful.

Borrego obtained a *Miranda*[4] waiver and interviewed Benjamin. After the interview, Benjamin was arrested, booked, and charged with two counts of armed robbery, a non-bondable offense. He remained jailed for 15 days and thereafter was required to wear an ankle monitor for a period.

As relevant here, Benjamin alleged that Borrego violated his right to due process when he misadvised him of his right to counsel, refused to notify him that Napoleon was present at the police station and wanted to speak with him, and lied to Napoleon about his potential client's interrogation and whereabouts. Borrego

Page 5

moved to dismiss on the ground of qualified immunity, and, after a hearing, the district court denied the motion, concluding that the second amended complaint sufficiently alleged that Borrego's conduct amounted to a denial of Benjamin's clearly established constitutional right to due process. Borrego timely filed this interlocutory appeal.

II.

"Once the affirmative defense of qualified immunity is advanced[,] unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified

immunity is entitled to dismissal before the commencement of discovery." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (alteration and internal quotation marks omitted). "We review de novo a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (internal quotation marks omitted).

III.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone*, 326 F.3d at 1357

Page 6

(internal quotation marks omitted).[5] To demonstrate that an official performing a discretionary function is not entitled to qualified immunity, "the plaintiff must demonstrate (1) that the facts show that the official violated the plaintiff's constitutional rights and (2) that the law clearly established those rights at the time of the alleged misconduct." *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1352-53 (11th Cir. 2015) (internal quotation marks omitted). "We may address those two inquiries in either order." *Id.* at 1353.

Without addressing whether a constitutional violation occurred, Borrego argues that Benjamin failed to assert a violation of clearly established federal law. We agree. A plaintiff may establish a due process violation under the Fourteenth Amendment stemming from a law enforcement officer's conduct only if that conduct "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Benjamin raises two cases as clearly establishing that Borrego's conduct shocks the conscience, *Moran v. Burbine*, 475



U.S. 412 (1986), and *Haliburton v. State*, 514 So. 2d 1088 (Fla. 1987). But neither does.

In *Burbine,* the Supreme Court addressed a due process claim on facts somewhat similar to the facts alleged in this case. Police arrested Brian Burbine for a burglary and transported him to the police station. *Burbine,* 475 U.S. at 416-17. Police suspected that Burbine also had been involved in a murder and intended

Page 7

to question him regarding the crime. *Id.* at 416. Burbine's sister, unbeknownst to Burbine, contacted the Public Defender's Office to obtain legal assistance for her brother. *Id.* A public defender who answered one of these telephone calls then called the police department, confirmed Burbine's presence at the station, and told a detective that she would act as Burbine's counsel in the event the police intended to question him. *Id.* at 417. The detective told the public defender that Burbine would not be questioned that night, but in fact Burbine was subjected to "a series of interviews" during which he executed a series of *Miranda* waivers. *Id.* Burbine asserted that the detective's interference with his communications with the public defender violated his rights under the Due Process Clause. The Supreme Court held that, "on these facts, the conduct falls short of the kind of misbehavior that so shocks the sensibilities of civilized society" as to constitute a due process violation, although it noted "that on facts more egregious than those presented here police deception might rise to a level of a due process violation." *Id.* at 432-34.

It is this statement, Benjamin argues, that clearly establishes the constitutional violation in his case, which, he says presents "facts more egregious" than those in *Burbine. Id.* Setting aside whether the facts of this case are more egregious than those in *Burbine,* however, the suggestion in *Burbine* that worse facts might run afoul of the Due Process Clause cannot clearly establish the fact of a due process violation in this case. "The clearly established standard . . . requires

Page 8

that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted). *Burbine* set forth no "rule" for officers to follow; thus, it cannot clearly establish Benjamin's due process right in this case.

In *Haliburton*—which also concerned facts similar to this case—the Florida Supreme Court held that it is a violation of "the due process provision of article I, section 9, of the Florida Constitution" when a police officer "fail[s] to notify [an individual] that an attorney was present and requesting to see him." 514 So. 2d at 1089-90. The court in *Haliburton* expressly characterized its holding as "a matter of state law" only. *Id.* at 1090. Federal courts may rely on a state court decision to decide whether a plaintiff has demonstrated a violation of his clearly established rights. *See Case v. Eslinger,* 555 F.3d 1317, 1328 (11th Cir. 2009) (considering Florida courts' decisions regarding probable cause to arrest in analyzing § 1983 claim based on alleged violation of Fourth and Fourteenth Amendments). But for this reliance to be proper, the state court decision must pertain to a violation of *federal* law. *See id.; Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) ("The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation,

Page 9

protecting from suit all but the plainly incompetent or one who is knowingly violating the *federal* law." (emphasis added) (internal quotation marks and citation omitted)). Since *Haliburton*'s due process holding was expressly confined to state law, it cannot clearly establish a federal due process right.



We do not condone the conduct alleged in this case. Nevertheless, because Benjamin's second amended complaint did not allege the violation of a clearly established federal right, Borrego's motion to dismiss based on qualified immunity should have been granted. *Cottone*, 326 F.3d at 1357.

IV.

For the foregoing reasons, we reverse the district court's denial of Borrego's motion to dismiss Benjamin's claim that he was denied his right to due process when Borrego interfered with Napoleon's attempts to contact him.

**REVERSED.**

--------

Footnotes:

¹ Benjamin also sued the City of Miami. The district court dismissed those claims—some with prejudice and some without prejudice—and Benjamin has not appealed from that decision. Accordingly, we address no claims against the City of Miami.

² Because the district court decided this case at the motion to dismiss stage, we accept the facts alleged in Benjamin's second amended complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We thus recite the facts as Benjamin alleged them.

³ "Doc. #" refers to the entry on the district court docket.

⁴ *Miranda v. Arizona*, 384 U.S. 436 (1966).

⁵ Borrego indisputably was performing a discretionary function when he allegedly interfered with Napoleon's attempts to access Benjamin.

--------

